WESLEY H. H. CHING (#2896)
whc@fmhc-law.com
SHEREE KON-HERRERA (#6927)
skh@fmhc-law.com
FUKUNAGA MATAYOSHI CHING
& KON-HERRERA, LLP
1200 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:   (808) 533-4300
Facsimile:   (808) 531-7585

JEFFREY J. BOUSLOG (*pro hac vice* to be
filed)
jbouslog@foxrothschild.com
PATRICK M. FENLON (*pro hac vice* to be
filed)
pfenlon@foxrothschild.com
FOX ROTHSCHILD LLP
222 South Ninth Street, Suite 2000
Minneapolis, Minnesota 55402
Telephone:   (612) 607-7000
Facsimile:   (612) 607-7100

*Attorneys for Plaintiff Argonaut Insurance
Company*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY, an Illinois stock insurance company,<br><br>       Plaintiff,<br><br>  vs. | Civil No.<br><br>**COMPLAINT; SUMMONS** |

ST. FRANCIS MEDICAL CENTER,
a non-profit Hawaii corporation,

                    Defendant.

Comes now Plaintiff Argonaut Insurance Company ("Argonaut"), by and through its attorneys, Fox Rothschild LLP and Fukunaga Matayoshi Ching & Kon-Herrera, LLP, and alleges and avers as follows.

## PARTIES, JURISDICTION, AND VENUE

1.     Argonaut is an Illinois stock insurance company, with its principal place of business in Chicago, Illinois.  For purposes of 28 U.S.C. § 1332, Argonaut is a citizen of the State of Illinois.

2.     Upon information and belief, Defendant St. Francis Medical Center ("SFMC") is, and at all relevant times herein has been, a not-for-profit corporation incorporated in the State of Hawaii, with its principal place of business in the City and County of Honolulu, in the State of Hawaii.  For purposes of 28 U.S.C. § 1332, SFMC is a citizen of the State of Hawaii.

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because: (i) complete diversity exists among the parties; and (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     This Court has personal jurisdiction over SFMC and this Court is a proper venue for this civil action pursuant to 28 U.S.C. §§ 1391(b)(1) and

1391(b)(2), because: (i) SFMC resides in this judicial district, and (ii) a substantial part of the events giving rise to the claims set forth herein occurred in this judicial district.

5.     Argonaut brings this action pursuant to 28 U.S.C. § 1332 and asks this Court to award Argonaut monetary relief in an amount to be proven at trial as restitution and reimbursement for monies that Argonaut has paid, and prior to the time of trial may pay, to indemnify SFMC in connection with certain third-party claims that have been made against SFMC since approximately 2014.  The subject claims involve alleged childhood sexual abuse perpetrated by a now-deceased psychiatrist who, upon information and belief, was affiliated with SFMC between approximately 1959 and 1981.

6.     Argonaut also bring this action pursuant to 28 U.S.C. §§ 1332 and 2201 and asks this Court to determine and declare the rights and other legal relationships between Argonaut and SFMC arising out of certain alleged policies of insurance as it relates to the third-party claims that have been asserted against SFMC. There is an actual and continuing controversy between Argonaut and SFMC regarding their respective rights and obligations under the alleged insurance policies relative to these third-party claims.

7.     In December 2018, Argonaut filed a declaratory-judgment lawsuit against SFMC in the United States District Court for the District of Hawaii seeking

to obtain a ruling declaring the parties' rights and obligations, if any, as it related to four specific lawsuits that had been filed against SFMC as of that time (the "2018 Coverage Action"). The 2018 Coverage Action was styled *Argonaut Insurance Co. v. St. Francis Medical Center*, Civ. No. CV 18-00498-HG-WRP.

8.     In the 2018 Coverage Action, Argonaut asserted a single claim for declaratory relief relating to four specific underlying lawsuits that had been filed against SFMC as of December 2018. Argonaut did not assert any other causes of action against, nor did it seek any type of monetary relief from, SFMC.

9.     In October 2019, the district court granted SFMC's request that the court decline to exercise jurisdiction over the 2018 Coverage Action pursuant to the Declaratory Judgment Act and dismissed the operative complaint without prejudice. *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, No. 18-00498-HG-WRP, 2019 WL 12528962 (D. Haw. Oct. 30, 2019). In November 2021, the Ninth Circuit Court of Appeals affirmed. *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276 (9th Cir. 2021).

10.     This action is properly before this Court notwithstanding the procedural history of the 2018 Coverage Action.

11.     Unlike the 2018 Coverage Action, in this action, Argonaut has asserted independent claims for monetary relief against SFMC. Specifically, Argonaut seeks a monetary award as restitution and reimbursement for a number of indemnity

4

payments Argonaut has made since March 2021, at SFMC's request and subject to a complete reservation of rights, in order to fund portions of SFMC's obligations under settlement agreements SFMC had reached with several of the third-party claimants.

12.     The amount in controversy as to Argonaut's monetary claims exceeds $75,000, exclusive of interest and costs, based on Argonaut's past settlement payments alone.

13.     These monetary claims render jurisdiction over this action non-discretionary.  *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1113–14 (9th Cir. 2001).[1]

## FACTS

### *The Underlying Lawsuits*

14.     SFMC has been a named defendant or third-party defendant in the following lawsuits, which were filed in the Circuit Court of the First Circuit, State of Hawaii: (1) the consolidated cases of *Loy K.S. Watanabe, et al. v. Kamehameha Schools/Bernice Pauahi Bishop Estate, et al.*, Civil No. 16-1-0086-01 VLC and *David W.K. Auld, et al. v. Kamehameha Schools/Bernice Pauahi Bishop Estate, et al.*, Civil No. 16-1-0876-04 DEO; (2) *John Doe 1 v. Trustees of the Estate of Bernice*

---

[1] Argonaut's monetary claims were not part of the 2018 Coverage Action and are not addressed by the jurisdictional rulings that were made by the district court and Ninth Circuit Court of Appeals in the 2018 Coverage Action.

*Pauahi Bishop dba Kamehameha Schools, et al.*, Civil No. 16-1-0574-03 VLC; (3) *Student Doe 30 v. Trustees of the Estate of Bernice Pauahi Bishop dba Kamehameha Schools, et al.*, Civil No. 16-1-0809-04 JPC; (4) *Kevin Kamalu v. Kamehameha Schools/Bernice Pauahi Bishop Estate, et al.*, Civil No. 20-0000463; (5) *Anthony P. Funn v. Richard D. Gronna, as Personal Representative of the Estate of Robert McCormick Browne, et al.*, Civil No. 20-0000542; (6) *John Roe No. 91 v. St. Francis Medical Center, et al.*, Civil No. 20-0000605; (7) *John Roe No. 115 v. St. Francis Medical Center, et al.*, Civil No. 20-0000606; (8) *Duke Kahanamoku Paoa, et al. v. Trustees of the Estate of Bernice Pauahi Bishop DBA Kamehameha Schools, et al.*, Civil No. 20-0000617; (9) *Joseph G. Blackburn, II v. Richard D. Gronna, as Personal Representative of the Estate of Robert McCormick Browne, et al.*, Civil No. 20-0000664; (10) *George H. Wright v. Richard D. Gronna, as Personal Representative of the Estate of Robert McCormick Browne, et al.*, Civil No. 20-0000667; (11) *James "Kimo" McClellan v. Trustees of the Estate of Bernice Pauahi Bishop dba Kamehameha Schools, et al.*, Civil No. 20-0001095; and (12) *A.S., et al. v. Trustees of the Estate of Bernice Pauahi Bishop dba Kamehameha Schools, et al.*, Civil No. 21-0000210.

15.     SFMC also has been the subject of several similar claims that have not resulted in lawsuits to date, including, without limitation, claims made in connection with other dispute resolution processes, including without limitation Hawaii's

Medical Inquiry Conciliation process for medical-tort claims and private mediations (collectively with the lawsuits identified in the foregoing paragraph, the "Underlying Lawsuits").

16.     The plaintiffs in the Underlying Lawsuits (the "Underlying Plaintiffs") allege that at various times between 1959 and the mid-1980s, they were minor patients of a psychiatrist named Dr. Robert Browne ("Dr. Browne") and that Dr. Browne sexually abused them in the course of his psychiatry practice.  Some of the Underlying Plaintiffs also allege that Dr. Browne improperly drugged them with, *inter alia*, medications in connection with office visits.  The Underlying Plaintiffs allege that they have suffered damages as a result of Dr. Browne's alleged sexual abuse and misconduct.

17.     For much of the period during which the Underlying Plaintiffs allege that they were sexually abused, Dr. Browne was a consulting psychiatrist for Kamehameha Schools.

18.     Upon information and belief, Dr. Browne was also affiliated with SFMC between approximately 1959 and 1981, and his affiliation with SFMC ended in late-December 1981.

19.     The Underlying Plaintiffs have alleged that SFMC is liable for their alleged damages under various factual and legal theories.  For example, the Underlying Lawsuits allege that SFMC negligently selected, trained, hired,

credentialed, supervised, retained, and/or peer reviewed Dr. Browne and others involved in the psychiatric intervention program of which the Underlying Plaintiffs were a part.  Many of the Underlying Plaintiffs also allege that SFMC breached its duties as a medical provider to provide safe and competent psychiatric care to the Underlying Plaintiffs by, *inter alia*, failing to develop, publish, and enforce safe policies and procedures regarding psychiatric intervention of children; failing to adequately evaluate and monitor psychiatric intervention imposed upon child patients, including the services provided by Dr. Browne; failing to determine whether the Underlying Plaintiffs were making reasonable progress while being treated by Dr. Browne; and failing to advise the Underlying Plaintiffs and their parents about the progress of such treatment and the need for further treatment, if any.  Certain of the Underlying Lawsuits expressly label the Underlying Plaintiffs' claims against SFMC as claims for "medical malpractice" or "gross professional negligence" and allege that SFMC breached duties it owed to the Underlying Plaintiffs "as a medical provider."

20.    With the exception of a few of the Underlying Lawsuits that do not involve former students of Kamehameha Schools, each of the Underlying Lawsuits named as defendants one or more of the following individuals in their capacities as trustees of the Estate of Bernice Pauahi Bishop *dba* Kamehameha Schools: Robert

K.W.H. Nobriga, Corbett A.K. Kalama, Micah A. Kane, Lance Keawe Wilhelm, Elliot Kawaiho ʻOlana Mills, and Crystal Kauilani Rose (collectively, "KS").

21.    KS, in turn, filed crossclaims and third-party complaints against SFMC for, *inter alia*: (1) negligence; (2) breach of contract; (3) indemnity; (4) contribution/equitable indemnity; and (5) for the recovery of attorneys' fees and expenses under *Uyemura v. Wick*, 57 Haw. 102, 551 P.2d 171 (1976) (collectively, the "KS Claims").

22.    Much like the allegations made by the Underlying Plaintiffs against SFMC, KS alleges, *inter alia*, that SFMC negligently selected, hired, credentialed, supervised, retained, and peer reviewed Dr. Browne and those working with him in connection with the delivery of psychiatric services and that SFMC's conduct as a medical provider fell below the standard of care because SFMC negligently failed to provide medically appropriate psychiatric therapy to KS students.

### *Defense and Settlement of the Underlying Lawsuits*

23.    SFMC tendered the Underlying Lawsuits, including the KS Claims, to Argonaut for defense and indemnity.

24.    Argonaut has provided, and for each of the Underlying Lawsuits that is still pending, continues to provide, SFMC with a defense against the Underlying Lawsuits, including the KS Claims, subject to a complete reservation of rights.

25.     Argonaut timely and repeatedly advised SFMC that Argonaut reserved, and continues to reserve, the right to contest both defense and indemnity coverage for the Underlying Lawsuits.

26.     Argonaut also timely sought to have the district court clarify the parties' rights and obligations, if any, pertaining to certain of the Underlying Lawsuits in the 2018 Coverage Action.

27.     Beginning in approximately November 2020, SFMC began reaching settlements with certain of the Underlying Plaintiffs.  To date, SFMC has reached confidential settlement agreements with fifteen of the Underlying Plaintiffs.

28.     Before SFMC reached these settlement agreements, SFMC and Argonaut reached agreements among themselves as to how SFMC's obligations under those settlement agreements would be funded, at least initially.

29.     SFMC asked Argonaut to contribute to the funding of SFMC's settlement obligations under each of these settlement agreements.

30.     Argonaut agreed to contribute to the settlements.  However, given the many disputed coverage issues that remained unresolved due, in part, to the fact that Argonaut's efforts to obtain declaratory relief via the 2018 Coverage Action had been frustrated, Argonaut explained to SFMC that it would only agree to contribute to the settlements on the condition that Argonaut's settlement payments would be made subject to a complete reservation of Argonaut's rights and that Argonaut would

be entitled to seek reimbursement in the future from SFMC for Argonaut's settlement contributions.

31.    SFMC accepted these conditions, and for each settlement agreement that SFMC reached, SFMC and Argonaut negotiated specific dollar amounts or percentages that SFMC and Argonaut would each contribute, subject to these conditions, in order to fund SFMC's settlement obligations.

32.    Since 2021, Argonaut has made settlement payments subject to these conditions in connection with settlements SFMC has reached with twelve of the Underlying Plaintiffs.

33.    SFMC has failed and refused to reimburse Argonaut for Argonaut's settlement payments to date.

### *The Alleged Insurance Policies*

34.    The relevant period for purposes of the coverage dispute between Argonaut and SFMC is 1959 through 1984.[2]

35.    Argonaut has performed diligent, good-faith searches for any insurance policies it may have issued to SFMC between 1959 and 1984.

---

[2] Upon information and belief, Dr. Browne's affiliation with SFMC ended in 1981.  Argonaut contends that none of the alleged insurance policies would afford coverage for damages because of injuries arising out of sexual abuse taking place after that date.  However, a small group of Underlying Plaintiffs allege that Dr. Browne sexually abused them during some or all of 1982, 1983, and/or 1984, when Dr. Browne was no longer affiliated with SFMC.  SFMC has asserted that it is entitled to a defense and indemnity from Argonaut for sexual abuse that is alleged to have occurred during this period.

36.    Upon information and belief, SFMC has conducted its own searches for such policies.

37.    Notwithstanding these efforts, neither SFMC nor Argonaut has been able to: (1) locate complete copies of any of the alleged policies; (2) establish the complete terms and conditions of any of the alleged policies; or (3) establish any of the material terms and conditions, other than the policy periods, for some of the alleged policies.

38.    SFMC has admitted that it lacks complete copies of any of the alleged policies, but SFMC has denied that it is unable to establish any of the material terms and conditions, other than the policy periods, for some of the alleged policies. SFMC has also denied that it is SFMC's burden to establish the terms and conditions of the alleged policies.

39.    In addition to the lost-policy issues, the Underlying Lawsuits raise a number of additional coverage issues about which Argonaut and SFMC disagree.

40.    For example, and without limitation, even if SFMC could otherwise establish the terms and conditions of the alleged policies and meet its further burden of proving that the alleged policies afford indemnity coverage for the claims that SFMC has settled to date, based on the policy records the parties have located, any potential indemnity coverage for these claims would be exclusively afforded by the Hospital Professional Liability coverage parts of the alleged policies.

41.    The limited policy records that Argonaut and SFMC have located to date for the alleged Argonaut primary policies covering the policy periods from December 1, 1963 to December 1, 1964, December 1, 1964 to December 1, 1965, and December 1, 1976 to December 1, 1977, include separate Hospital Professional Liability ("HPL") endorsements for each of these policy years.

42.    Each of the HPL endorsements contains an intra-policy anti-stacking or non-concurrency provision, which renders the Comprehensive General Liability ("CGL") and HPL coverages provided by each policy mutually exclusive and precludes stacking of coverage (and limits) under both coverage parts.

43.    For example, the 1976 to 1977 HPL endorsement provides: "C. Limitation of Coverage Under Any Other Liability Insurance.  Except as stated in this Part, the policy does not apply to injury arising out of the rendering of or failure to render the professional services described [above]."  Similarly, the 1964 to 1965 and 1965 to 1966 HPL endorsements provide: "Except as stated in this endorsement, the policy does not apply to injury or death arising out of any malpractice, error, mistake, acts or omissions described in subsection (1) or (2) above."

44.    Each of the HPL endorsements also contains an inter-policy anti-stacking provision, which limits Argonaut's liability for any claim covered under the HPL coverage part of an Argonaut policy to a single "each claim" limit regardless of the number of Argonaut policies that claim might trigger: "The limit of liability

stated below as applicable to 'each claim' is the limit of the company's liability for all damages on account of each claim or suit covered hereunder . . . ."

45.    The coverage provided under each of the HPL endorsements is also subject to a general aggregate limit, which each of the HPL endorsements describes as follows: "the limit of liability stated below as 'aggregate' is, subject to the foregoing provision respecting each claim, the total limit of the company's liability hereunder for all damages."

46.    Although the parties have located little to no evidence as to the terms and conditions, including limits of liability, of the alleged Argonaut policies that SFMC alleges were in place in the 1960s, 1970s, and 1980s, certain Hawaii statutes that were in effect from the mid-1970s through the mid-1980s demonstrate that the HPL coverage parts of the Argonaut policies that SFMC alleges were in effect between 1976 and 1984 would have been subject to per-claim limits of no more than $100,000 and aggregate limit of no more than $1,000,000.

47.    Specifically, effective on or around September 1, 1976, the Hawaii legislature enacted certain legislation establishing the Hawaii Patients' Compensation Fund (the "Fund").

48.    Pursuant to the statute, the fund was "the exclusive agency through which medical malpractice insurance in excess of $100,000 may be written in the

state for health care providers as defined in section – 1."  Haw. Rev. Stat. § 671-31
(1976).

49.    According to the statute, "[t]he fund shall offer medical malpractice
insurance in excess of the basic insurance coverage necessary to participate in the
fund as provided in section 671-36 in such amounts as shall be set by rule adopted
by the insurance commissioner pursuant to chapter 91; provided that the liability of
the fund for any policy shall not exceed $1,000,000 per claim and $5,000,000 per
policy period aggregate."  Haw. Rev. Stat. § 671-31 (1977).

50.    Until sometime in or around 1984 when the legislation was repealed,
every healthcare provider in Hawaii was required to pay into the Fund.  Haw. Rev.
Stat. § 671-31, subps. (1), (2) (1976); Haw. Rev. Stat. § 671-31, subps. (1), (2)
(1977).

51.    In order to participate in the Fund, every healthcare provider was also
required to provide evidence to the insurance commissioner of maintenance of
financial responsibility in the form of either "[m]edical malpractice insurance in the
amount of $100,000" or "a surety bond, proof of qualifications as a self-insurer, or
other securities affording financial responsibility substantially equivalent to that
afforded under a medical malpractice insurance policy in the amount of $100,000 as
approved by the insurance commissioner under rules adopted by the insurance
commissioner."  Haw. Rev. Stat. § 671-36 (1976).

52.     Effective on or around June 4, 1977, this provision was amended to require evidence of a $100,000 per-claim limit and a $1 million aggregate limit for primary medical malpractice insurance policies that were issued to any hospital that participated in the Fund.  Haw. Rev. Stat. § 671-36 (1977).  These statutory limits appear to have remained in place until sometime in or around 1984, when the Fund was statutorily repealed and effectively put into run-off.

53.     Thus, assuming that the other terms of the alleged policies could be established and that SFMC complied with the above-referenced statutory and regulatory requirements relating to the Fund during the period from 1976 through approximately 1984, the HPL coverage parts of the alleged Argonaut policies would have provided a per-claim limit of no more than $100,000 and an aggregate limit of no more than $1,000,000 during the period in which this legislation was in effect.

54.     These limits are consistent with the limited policy records Argonaut and SFMC have been able to locate for the primary and umbrella policies that appear to have been in place for the policy periods from December 1, 1976 to December 1, 1977, December 1, 1980 to December 1, 1981, and December 1, 1981 to December 1, 1982.

55.     In the years leading up to the commencement of this action, Argonaut repeatedly advised SFMC of the aggregate limits of the HPL coverage parts and that the effect of the intra-policy anti-stacking provisions of the HPL endorsements was

to render the HPL coverage part the "exclusive source of recovery" under the alleged policies.

56.    For many years, both before and after receiving Argonaut's letters advising of these issues, SFMC itself affirmatively maintained that the HPL coverage parts of the alleged Argonaut policies apply to the Underlying Lawsuits.

57.    For example, in a May 26, 2017 letter from SFMC's outside coverage counsel, SFMC stated: "The plaintiffs . . . have alleged that St. Francis negligently hired, retained and supervised Dr. Browne.  St. Francis is not seeking coverage for claims against Dr. Browne himself but against the hospital.  Its hiring and supervision of medical personnel plainly arises out of the rendering of medical professional services by St. Francis."

58.    Shortly after SFMC began reaching settlements with some of the Underlying Plaintiffs, Argonaut advised SFMC that Argonaut continues to reserve all of its rights with respect to the Underlying Lawsuits and Argonaut's settlement contributions, but assuming SFMC is able to ultimately establish the material terms and conditions of the alleged policies and that the alleged policies otherwise afford coverage for the Underlying Lawsuits that SFMC has settled, Argonaut agrees with SFMC that indemnity coverage for those claims would be afforded only by the HPL coverage parts of the alleged policies.

59.    As Argonaut had previously advised SFMC in 2018 and 2019, Argonaut reiterated that the existence of HPL coverage would preclude application of CGL coverage pursuant to the anti-stacking/non-concurrency provisions in the HPL endorsements.

60.    Argonaut further explained that any such indemnity coverage would be subject to the HPL coverage parts' per-claim and aggregate limits and the HPL endorsements' inter-policy anti-stacking provisions.

61.    Finally, Argonaut advised SFMC that even if the alleged Argonaut policies afforded coverage for the settlements SFMC had reached to date, Argonaut is entitled to reimbursement from SFMC to the extent that Argonaut's settlement contributions exceed the limits of the HPL coverage parts of the applicable alleged Argonaut policies.

62.    SFMC subsequently advised Argonaut that SFMC no longer contends that the HPL coverage parts apply to any of the Underlying Lawsuits and refused to reimburse Argonaut for its settlement contributions.

## COUNT I

### UNJUST ENRICHMENT/RESTITUTION

63.    Argonaut realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

64.     Argonaut conferred a benefit upon SFMC in the form of payments that Argonaut made to satisfy SFMC's payment obligations under settlement agreements that SFMC has reached with certain of the Underlying Plaintiffs.   Argonaut's settlement contributions inured to the benefit of SFMC by resolving certain of the Underlying Lawsuits seeking monetary damages directly from SFMC.

65.     Argonaut agreed to make these payments at SFMC's request on the condition that Argonaut's payments were made subject to a complete reservation of all of Argonaut's rights and defenses to coverage under the alleged insurance policies, applicable law, and equity, and on the further condition that Argonaut would be entitled to seek reimbursement from SFMC for Argonaut's settlement payments in the future.

66.     SFMC accepted the benefit conferred and the conditions described in the foregoing paragraph.

67.     For the reasons set forth above and in Argonaut's reservations of rights, Argonaut was not obligated to indemnify SFMC for the claims asserted by the Underlying Plaintiffs to whom Argonaut's settlement payments relate.

68.     Alternatively, if Argonaut was obligated to indemnify SFMC with respect to any of these settled claims, Argonaut's settlement payments exceeded the amounts that Argonaut was obligated to pay under the terms and conditions of the applicable insurance policies and applicable law.

69.     SFCM has been enriched through Argonaut's bearing of these settlement payments for which Argonaut was not legally responsible and for which Argonaut and SFCM did not bargain.

70.     This enrichment, and the retention of these benefits by SFMC, is unjust.

71.     There is no adequate remedy provided by law.

72.     As a direct and proximate result of SFMC's acts and/or omissions, Argonaut has been damaged and Argonaut is entitled to reimbursement or restitution from SFMC, and a money judgment against SFMC, in the amount of Argonaut's settlement payments, plus applicable interest and attorneys' fees and costs accrued in bringing this action.[3]

## COUNT II

## QUANTUM MERUIT

73.     Argonaut realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

---

[3] By the time this action proceeds to trial, Argonaut expects that it will have made additional payments to or on behalf of SFMC in order to fund, in whole or in part, additional settlements, and possibly judgments, in the Underlying Lawsuits—including three settlement agreements that Argonaut has already agreed to partially fund subject to a reservation of rights. Argonaut intends to seek reimbursement from SFMC in this action for any such future payments that Argonaut makes, or agrees to make, as of the time of trial should such payments exceed Argonaut's obligations, if any, under the alleged insurance policies.

74.     Argonaut conferred a benefit upon SFMC in the form of payments that Argonaut made to satisfy SFMC's payment obligations under settlement agreements that SFMC has reached with certain of the Underlying Plaintiffs.

75.     Argonaut agreed to make these payments at SFMC's request on the condition that Argonaut's payments were made subject to a complete reservation of all of Argonaut's rights and defenses to coverage under the alleged insurance policies, applicable law, and equity, and on the further condition that Argonaut would be entitled to seek reimbursement from SFMC for Argonaut's settlement payments in the future.

76.     SFMC accepted the benefit conferred and the conditions described in the foregoing paragraph.

77.     In so doing, a new relationship was formed, which was contractual in nature.

78.     Argonaut held a reasonable expectation that if it did not owe a duty to indemnify SFMC for some or all of the settlement payments Argonaut made, Argonaut would be reimbursed in such amounts.

79.     For the reasons set forth above and in Argonaut's reservations of rights, Argonaut was not obligated to indemnify SFMC for the claims asserted by the Underlying Plaintiffs to whom Argonaut's settlement payments relate.

80.    Alternatively, if Argonaut was obligated to indemnify SFMC with respect to any of these settled claims, Argonaut's settlement payments exceeded the amounts that Argonaut was obligated to pay under the terms and conditions of the applicable insurance policies and applicable law.

81.    After Argonaut began funding the SFMC settlements in 2021 subject to the above-referenced conditions, Argonaut raised with SFMC the issue of its accruing reimbursement claim.

82.    SFMC responded, indicating that it disputes Argonaut's entitlement to reimbursement and refuses to reimburse Argonaut for its settlement contributions.

83.    SFMC would be unjustly enriched if it is not required to compensate Argonaut for the benefit conferred.

84.    As a direct and proximate result of SFMC's acts and/or omissions, Argonaut has been damaged and Argonaut is entitled to reimbursement or restitution from SFMC, and a money judgment against SFMC, in the amount of Argonaut's settlement payments, plus applicable interest and attorneys' fees and costs accrued in bringing this action.

## COUNT III

## DECLARATORY JUDGMENT

85.    Argonaut realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

86.    There is an actual and continuing controversy between Argonaut and SFMC.  Therefore, Argonaut seeks a determination from this Court, as to:

(a)    What insurance policies Argonaut issued to SFMC from 1959 through 1984;

(b)    The terms and conditions of any insurance policies that the Court finds Argonaut to have issued to SFMC from 1959 through 1984;

(c)    What duties Argonaut owes to SFMC related to the Underlying Lawsuits, including the KS Claims, under the terms of any Argonaut insurance policy as the Court finds them to have existed, including but not limited to the coverage part and limit(s) of liability, if any, that apply to each of the claims asserted against SFMC in the Underlying Lawsuits; and

(d)    For a binding declaration as to the amount of indemnity payments Argonaut is entitled to recoup from SFMC.

**WHEREFORE**, Argonaut prays for relief as follows:

A.    For a money judgment against SFMC in the amount that Argonaut is entitled to be reimbursed for payments it has made, or will have made or agreed to make as of the time this action proceeds to trial, in order to satisfy, in whole or in part, SFMC's obligations under settlement agreements reached, or judgments that may be entered, in the Underlying Lawsuits, plus applicable interest and attorneys' fees pursuant to Haw. Rev. Stat. § 607-14;

B.      For a binding declaration as to what insurance policies Argonaut issued to SFMC from 1959 through 1984;

C.      For a binding declaration as to the enforceable terms and conditions of any insurance policies that the Court finds Argonaut to have issued to SFMC from 1959 through 1984;

D.      For a binding declaration as to what duties Argonaut owes to SFMC related to the Underlying Lawsuits, including the KS Claims, under the terms of any Argonaut insurance policy as the Court finds them to have existed, including but not limited to the coverage part and limit(s) of liability, if any, that apply to each of the claims asserted against SFMC in the Underlying Lawsuits;

E.      For a binding declaration as to the amount of indemnity payments Argonaut is entitled to recoup from SFMC; and

F.      For such other relief as the Court may deem just, proper, and appropriate under the circumstances.

Dated:  Honolulu, Hawaii, January 19, 2022

FUKUNAGA MATAYOSHI CHING & KON-HERRERA, LLP


____/s/ Wesley H. H. Ching_____
Wesley H. H. Ching (#2896)
Sheree Kon-Herrera (#6927)
1200 Davies Pacific Center
841 Bishop Street
Honolulu, HI  96813
Telephone: (808) 533-4300
Facsimile: (808) 531-7585
whc@fmhc-law.com
skh@fmhc-law.com

FOX ROTHSCHILD LLP
Jeffrey J. Bouslog (*pro hac vice* to be filed)
Patrick M. Fenlon (*pro hac vice* to be filed)
222 South Ninth Street, Suite 2000
Minneapolis, MN 55402
Telephone: (612) 607-7000
Facsimile: (612) 607-7100
jbouslog@foxrothschild.com
pfenlon@foxrothschild.com

*Attorneys for Plaintiff*
*Argonaut Insurance Company*